# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| EUGENE PETER RUBACKY, ) | |
| ) | 2:05-CV-00465-RCJ-(LRL) |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| JOAN RESTIFO, et al., ) | |
| ) | |
| Defendants. ) | |

This matter coming before the Court on Plaintiff's Motion for Summary Judgment (#12) filed December 13, 2005, and Plaintiff's Motion to Strike (#18) filed January 17, 2006. The Court has considered the Motions, the pleadings on file, and oral arguments on behalf of the parties. IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (#12) is *granted*, and Plaintiff's Motion to Strike (#18) is *denied*.

**FACTS**

Eugene Peter Rubacky ("Ruckaby") and Joan Restifo ("Restifo") entered into a signed contract on September 21, 2004, in which Restifo agreed to sell one-third of his Company (1666 shares), Cohiba Carribbean's Finest, Inc., ("Cohiba") to Rubacky, who was to become a working partner for the company's east coast operations. Pursuant to the contractual agreement, Restifo was, no later than September 23, 2004, required to (1) sell, transfer, and convey to Rubacky one-third of the stock of Cohiba and (2) to transfer to Cohiba certain assets owned by Data Commodities Ltd. ("Data"), another company owned by Restifo.

In consideration, Rubacky was to pay Restifo $792,000. The contract agreement required that Rubacky pay Restifo $200,000 and execute a promissory note for the remaining $592,000 at closing. The contract further stipulated that in the event of a breach, the defaulting party would pay the non-defaulting party the sum of $10,000.

On April 11, 2005, Rubacky filed a claim against Restifo for breach of contract and misrepresentation, alleging that Restifo accepted Rubacky's $200,000, pursuant to the contract but failed to transfer all of the Cohiba stock, or to transfer the Data assets to Cohiba as mandated by the contract.

Restifo denies breaching the contract and claims that Rubacky failed to perform his duties under the contract. Additionally Restifo claims that Rubacky, through his actions, waived the contract provision that allowed him to declare the contract null and void and to receive his $200,000 in full.

Restifo does not deny his failure to deliver all of the Cohiba stock to Rubacky, nor that Rubacky is entitled to some return of his initial payment. Restifo argues however, that under the contract Rubacky is not entitled to a return of the entire sum of $200,000. Instead, Restifo argues that Rubacky should receive $155,000, which accounts for Rubacky's half of the $80,000 sale commission price ($40,000), and $5,000 in credit expenses taken by Rubacky which were never incurred.

On December 23, 2005, Defendants submitted a Motion for a Two-week Extension of Time to file an opposition to Plaintiff's Motion for Summary Judgment. The Court granted the Motion, extending the opposition deadline to January 9, 2006. On January 12, 2006, Plaintiff filed a Notice of Non-Opposition and Request for an Order Granting Plaintiff's Motion for Summary Judgment pursuant to Local Rule 7-2. On January 13, 2006, Defendants filed an Opposition to Plaintiff's Motion for Summary Judgment (#17). On January 17, 2006

1  Plaintiff filed a Motion to Strike (#18) Defendants' Opposition for untimeliness. Also on
2  January 17, 2006, Defendant filed an Opposition to Plaintiff's request for and Order Granting
3  Plaintiff's Motion for Summary Judgment (#17).

**DISCUSSION**

**I. Plaintiff's Motion to Strike**

Though local rules suggest that Plaintiff's Motion to Strike be granted, precedent weighs against granting summary judgment by default solely because a Plaintiff has failed to respond to a Defendants' dispositive motion.[1] Local Rule 7-2(d) provides that, "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion."

Plaintiff's Motion for Summary Judgment was filed on December 13, 2005. Plaintiff received a two week extension of time making January 9, 2006 the due date for his opposition. Defendant filed his opposition on January 13, 2006, four days late. Though the current matter appears to fit within the parameters set out by local rule 7-2(d), and Plaintiff cites case law from this district to argue that the Court must enforce the local rules of procedure in this instance, see Metzger v. Husman, 682 F.Supp 1109, 1111 (D. Nev., 1988), Plaintiff is incorrect.

The Ninth Circuit has ruled that a district court cannot grant a motion for summary judgment "simply because the opposing party violated the local rule." Marshall v. Gates, 44 F.3d 722, 725 (9th Cir. 1995) (citing Henry v. Gill Industries, Inc., 983 F.2d 943, 950 (9th Cir. 1993). "Summary judgment may be resisted and must be denied on no other grounds

---

[1] Here, Plaintiff's Motion is to Strike Defendants' Opposition to its Motion for Summary Judgment. If stricken, Defendants would be adjudged having failed to respond and the Court would be bound to grant Plaintiff's Motion for Summary Judgment pursuant to Local Rule 7-2(d).

than that the movant has failed to meet its burden of demonstrating the absence of triable facts." Id.

Therefore, here likewise, the Court should not grant Plaintiff's Motion to Strike—which in effect would be tantamount to granting its Motion for Summary Judgment—simply because Defendants failed to respond as required by local rules.

**II. Plaintiff's Motion for Summary Judgment**

    **A. Summary Judgment Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. Northwest Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment as a matter of law where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(c); Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering

that evidence in light of the appropriate standard of proof. Anderson, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. Id. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. Id.

**B. Application**

Here, Rubacky seeks summary judgment on his claim against Restifo for breach of contract. In order to satisfy his burden under the summary judgment standard for breach of contract, Rubacky must demonstrate the absence of any genuine issue of material fact regarding whether Restifo did indeed breach the contract.

To establish a cause of action for breach of contract, a plaintiff must prove (1) that there was a valid contract, (2) that the plaintiff performed as specified by the contract, (3) that the defendant failed to perform as specified by the contract, and (4) that the plaintiff suffered an economic loss as a result of the defendant's breach of contract. See Stewart v. Life Ins. Co. of North America, 388 F.Supp.2d 1138 (E.D.Cal., 2005).

**1. Validity**

Here, there is no dispute that the contract entered into by the parties is valid and binding. Thus we will move on to the second, third, and fourth elements of Plaintiff's breach of contract claim.

**2. Plaintiff's Performance**

Under the contract in question, Ruckaby was required to pay Restifo

$792,000—$200,000 upon signing the contract, and a promissory note for the remaining $592,000 at closing. (Plt.'s Mot. at Contract ¶ 3(a),(b), ¶ 11.) Undisputedly, Plaintiff paid Restifo the $200,000 up front, and executed the promissory note for $592,000 at closing. (See Def.'s Answer at ¶6; Plt.'s Mot. Transcript at 11:4–8; 83:20–25; 112:25–113:3.) Rubacky had no other obligations under the contract.

Defendant asserts that "it was the Plaintiff who decided to terminate the agreement and not comply with any of its terms or duties owed by him to the partnership after he entered into it on September 23, 2004." (Def.'s Opp. at 5.) Further, Defendant alleges that Plaintiff breached the contract by "[n]ot performing his duties the way he was supposed to, going out and meeting clients, turning around and calling my partners, my clients—which were his clients also—telling them that I committed fraud." (Def.'s Opp. to Summ. J. at 7, quoting Restifo Dep. p. 14–15.)

Other than Restifo's deposition stating that Plaintiff breached the contract, Defendant proffers no evidence to support such a claim. Furthermore, an examination of the contract does not indicate that Ruckaby had any obligations other than his payment of $792,000.

To the extent that Plaintiff argues that Ruckaby breached the contract by failing to perform duties not set out in the written contract, the Court cannot consider such arguments pursuant to Nevada's Parole Evidence Rule. In the absence of fraud or mistake, oral statements are not admissible to modify, explain, or contradict the plain terms of a valid written contract between two or more parties.

In Simms v. Grubb, 336 P.2d 759 (Nev. 1959), the Nevada Supreme Court stated,

> When parties reduce their contract to writing, all oral negotiations and agreements are merged in the writing, and the instrument must be treated as containing the whole contract, and parole proof is not admissible to alter its terms, or show that, instead of being absolute, as it purports to be, it was in reality conditional, unless the party attacking the instrument can establish

1     fraud or mistake in its execution.

2     Furthermore, the contract at issue in the instant matter provides that (1) "the
3 agreement may not be varied or altered or amended except by another document executed by
4 all parties hereto subsequent to the execution of this agreement," (2) "this agreement
5 constitutes the entire agreement between the parties," (3) "there are no warranties,
6 representations or understandings except as provided herein," and (4) and "[a]ny and all prior
7 understandings between the parties, whether written or oral . . . are hereby merged herein and
8 no party shall have any rights or obligations of any nature or description arising from or out
9 of any such prior understandings." (Plt.'s Mot. at Contract ¶ 21.)

10    Furthermore, "it has long been the policy in Nevada that absent some countervailing
11 reason, contracts will be construed from the written language and enforced as written." <u>Kaldi
12 v. Farmers Ins. Exchange</u>, 21 P.3d 16 (Nev. 2001) (quoting <u>Ellison v. C.S.A.A.</u>, 797 P.2d 975,
13 977 (Nev. 1990). Here, the language of the contract between the parties is clear and
14 unambiguous on its face in regards to Plaintiff's required performance, which was nothing
15 more than to pay Restifo $200,000 up front, and execute a promissory note for $592,000 at
16 closing. Therefore, it appears that Rubacky met his obligations as specified by the contract.

17    **3. Defendant's Failure to Perform**

18    Under the contract, in consideration for Rubacky's payment of $792,000, Restifo was,
19 no later than September 23, 2004, required to sell, transfer, and convey to Rubacky one-third
20 of Cohiba's common stock (1666 shares), and transfer certain assets owned by Data to
21 Cohiba.

22    Restifo admits that he did not transfer one-third of the Cohiba stock, nor the agreed
23 Data assets to Rubacky by September 23, 2004, but instead transferred 555 shares to Mr.
24 Rubacky. (<u>See</u> Plt.'s Mot. Transcript at 89:15–43, 93:9–20, 26:17–24.)

25

Though Restifo admits not transferring the 1,666 shares of Cohiba or all agreed upon Data assets to Rubacky as set out in the written agreement, he contends that Rubacky's claim is made in bad faith as an attempt to recover his entire $200,000 plus liquidated damages, and avoid paying his percentage of the sale commission price. Here, more importantly than the fact that Restifo's argument misconstrues the clear language of the Purchase Agreement, Restifo fails to rebut Rubacky's claim that he breached the contract by failing to transfer the Cohiba shares or Data assets by the date indicated on the agreement, or at all.[2]

Therefore, Rubacky has sufficiently proven that Rustifo indeed failed to perform as specified by the contract.

### 4. Plaintiff's Economic Loss as a Result of Defendant's Breach

Plaintiff claims that he has suffered the loss of his $200,000 payment to Restifo in satisfaction of his contractual obligation. It is not disputed that Rubacky has not yet received the number of Cohiba shares or Data assets set out in the purchase agreement, or that Restifo has refused to return Plaintiff's money. Therefore, Plaintiff has suffered the loss of $200,000 as a result of Restifo's breach.

Overall, Plaintiff has sufficiently proven the lack of any genuine issue of material fact that Defendant Restifo breached the purchase agreement entered into between the parties on September 21, 2004. Restifo's Opposition, though creative, fails to proffer any evidence to the contrary. Instead, a through examination of the contract entered into by the parties and the evidence presented in the pleadings demonstrates that there is no material issue of fact here, and that Plaintiff's Motion for Summary Judgment in regards to liability should be granted.

## II. Damages

---

[2] For a discussion regarding Restifo's misconstrual of the contract language see section III.

The contract entered into by Restifo and Rubacky contains three "out" provisions wherein the purchaser is provided the right to declare the purchase agreement null and void. Those provisions are found in paragraphs 2, 3(c), and 8. Plaintiff contends that under paragraphs 2 and/or 8 he is entitled to a full recovery of his $200,000, plus $10,000 in liquidated damages. Defendant, in opposition contends that Plaintiff's termination of the agreement was made under the provision in Paragraph 3(c), requiring him to pay fifty percent (50%) of the commission fee, and $5,000 in credit expenses taken by Rubacky which were never incurred. Assuming *arguendo* that the Court holds Defendant to have breached the purchase agreement as discussed above, the critical inquiry here then, is which of the contract's three out provisions apply. To make this determination, it is essential that the Court examine each of the three provisions.

Paragraph 2 of the contract sets out that the seller will convey one third of Cohiba's outstanding stock to the buyer, and transfer to Cohiba certain assets of Data. In this context, the provision then states,

> All assets are to be transferred on or before September 23, 2004. If such Assets are not transferred by that date, purchaser shall have the right, but not the obligation, to declare this Purchase Agreement null and void and to have any payments made by him pursuant to this purchase Agreement returned to him immediately. In addition, the following assets are to be conveyed by Data to Cohiba as well.

(Plt.'s Mot. at Contract ¶2.)

Paragraph 3(c) of the contract, after setting out the price and method of payment for the purchaser, states,

> Purchaser shall have the right, at any time during the first full year following Closing, hereunder, to declare this purchase agreement null and void and to have the purchase price (including the amount paid at Closing and any amounts paid pursuant to the Promissory Note) returned to him from the sellers. All such monies shall be repaid within ninety (90) days of Purchaser's declaration. In the event that Purchaser exercises this right, purchaser agrees to

      reimburse Seller (I) fifty percent (50%) of the commissions paid to Remax Central, said reimbursement not to exceed $100,000.00; (II) Seller's closing costs in an amount not to exceed $6,000.00; and (iii) any monies paid to purchaser by Cohiba other than as salary except for monies used to pay down the Promissory Note (including principal and interest).

(Plt.'s Mot. at Contract ¶3(c).)

Paragraph 8 of the contract lists two contingencies which, if not satisfied allow either party "the option of declaring the contract null and void in its entirety. In which event, the Purchaser shall be entitled to the immediate return of his Deposit, and the parties hereto shall be relieved of any further obligations under this Agreement."

One of the contingencies upon which the option is based in paragraph 8 is that "[e]ach of the parties hereto [have] fully complied and performed all duties and obligations required of each of them hereunder." (Contract at ¶ 8).

An examination of each of the three "out" clauses in context suggests that Defendant's construal of the contract is incorrect. Though indeed Plaintiff may have declared the contract null and void at any time (within one year of closing), under the provision in paragraph 3(c), (consequently requiring him to pay fifty percent (50%) of the sale commission price) the Court has already established that Defendant did breach the contract, thus giving Defendant ample reason to declare the agreement null and void pursuant to the provisions in paragraphs 2 and/or 8—neither of which require Plaintiff to pay a percentage of the sale commission price.

Defendant claims that the Plaintiff waived his right to declare the contract null and void under paragraph's 2 or 8 because he waited three to four months before doing so. This argument fails however, in light of Defendant's breach. Defendant's argument promotes an environment wherein, sellers, content not to perform as specified by contractual agreements, could essentially line the pockets of enterprising sales agents at the expense of purchasers

who exert fath in a partner by delaying the cancellation of agreements not immediately fulfilled.

### A. Liquidated Damages

Paragraph 14 of the purchase agreement provides, that in an effort to avoid litigation, the parties agreed, that in the event of a breach, the defaulting party shall pay the non-defaulting party the sum of $10,000 as liquidated damages. The provision establishes that the payment is intended not as a penalty, but because "damages [in such a case] are difficult to ascertain." (Contract at ¶ 14.)

Plaintiff has successfully demonstrated the absence of any genuine issue of material fact that his termination of the agreement allows him full compensation for his $200,000 payment pursuant to paragraphs 2 or 8, plus $10,000 in payment for liquidated damages pursuant to paragraph 14.

### CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (#12) is *granted* in the amount of $210,000, and Plaintiff's Motion to Strike Defendant's Opposition to Summary Judgment (#18) is *denied*.

DATED: July 17, 2006.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE